UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEMETRIUS MCLAUGHLIN,

v. Case No. 8:03-cr-226-T-17MSS
8:07-cv-1770-T-17MSS

UNITED STATES OF AMERICA.

---

O R D E R

This cause is before the Court on Demetrius McLaughlin's 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. (CV-7; CR-353). A review of the record demonstrates that McLaughlin's motion to vacate must be denied.

Procedural History

A federal grand jury in the Middle District of Florida, Tampa Division, returned an indictment charging Demetrius McLaughlin, James Howze, Teresa Sutton, and two others with conspiring to manufacture fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 846 and 841(b)(1)(A)(viii), and possessing and distributing pseudoephedrine, a listed chemical, knowing and having reasonable cause to believe that it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2. CR-1.1 McLaughlin was tried by a jury, CR-150, 153, 156, which found him guilty as charged, CR-156. The district court sentenced McLaughlin principally to serve life imprisonment. Doc. 230.

McLaughlin pursued a direct appeal alleging that the district court (1) erred in denying his motion for judgment of acquittal based in insufficient evidence; (2) erred in admitting evidence of McLaughlin's prior crack cocaine dealings and prior convictions; and

(3) violated the Sixth Amendment by increasing McLaughlin's sentence due to his prior convictions. See McLaughlin's appellate and reply briefs, attached as Exhibit A and C, and the United States' brief, attached as Exhibit B to Doc. CV-26.

The Eleventh Circuit affirmed McLaughlin's conviction and sentence. CR-296; *United States v. McLaughlin*, 164 Fed. Appx. 802 (11th Cir. 2005). McLaughlin's petition for writ of certiorari was denied on October 2, 2006. *McLaughlin v. United States*, 127 S.Ct. 334 (2006).

While his petition was pending before the Supreme Court, McLaughlin filed a motion new trial, CR-312, 316, alleging a *Brady* violation and seeking discovery and inspection in support of a motion for new trial. CR-314. The motions, including the motion for new trial were denied. CR-324, 325, 326. McLaughlin appealed the denial of the motion for new trial. CR-334. On May 29, 2008, the Eleventh Circuit denied McLaughlin's appeal. The mandate issued July 24, 2008. *United States of America v. Demetrius McLaughlin*, Case No. 07-12481-DD. CR-359.

McLaughlin timely filed the present amended motion to vacate on which he is proceeding.

## Factual Background

On July 16, 2002, McLaughlin and Sutton were at Sutton's residence in Pasco County, which was under surveillance, and decided to take Sudafed and batteries from Sutton's residence to Howze so that Howze could manufacture methamphetamine. CR-224 at 23-24, 73. Detective Thompson saw the truck and recognized McLaughlin and Sutton from prior dealings. CR-223 at 60, 134. Other officers eventually conducted a traffic stop because Detective Sutton knew there was an outstanding warrant for Sutton's arrest and

also because he incorrectly believed there was a warrant for McLaughlin's arrest. CR-223 at 63, 66-67, 106,111, 114-15, 135, 199.

When stopped, McLaughlin failed to provide his driver's license and the registration for the truck and both he and Sutton gave the officers false names, so they were arrested. CR-223 at 138, 146, 192-95, 203, 207-09. Deputy Cabbage detected the strong odor of a chemical solvent. CR-223 at 197, 213, 216, 218-19; CR- 224 at 122. Officers searched the truck and found items commonly used to manufacture methamphetamine. CR-223 at 69-70, 75-78, 80-91, 94-95, 134, 136-37, 196, 220; CR-224 at 30-32, 34-35. Officers seized160 grams of pseudoephedrine, CR- 223 at 147, 156, enough to produce at least seventy-five grams of methamphetamine. CR-223 at 159-60. Sutton later told Howze that, when they were stopped, she and McLaughlin had been driving to his house to "cook" methamphetamine. CR-224 at 180, 182.

McLaughlin later told a confidential informant where to find a green tank of anhydrous ammonia, a chemical used to manufacture methamphetamine, he and Sutton had brought to "Fast Eddie" at the "Gator Farm" in early July 2006. CR-224 at 98. In a written statement and in his testimony, Howze denied that he and McLaughlin ever had conspired to manufacture methamphetamine. CR-224 at 176-77, 181-82.

McLaughlin testified that he never had manufactured methamphetamine and that he was merely driving Sutton to her mother's house. CR-224 at 193-95, 197, 202-08, 211. McLaughlin testified that he had seen someone discard a green tank at the Gator Farm and that he had suggested that the confidential informant, with whom he had traded similar goods for crack cocaine, recover the tank and sell it because he had owed the informant a favor. CR-224 at 200-02, 215

Prior to trial, the United States filed notices of its intent to introduce Fed. R. Evid. 404(b)-type evidence against McLaughlin. CR-115; Doc. 31. McLaughlin did not oppose the 404(b) notices, nor did he object when the officers testified about his crack cocaine dealing and prior conviction. CR-223 at 60-61. Indeed, McLaughlin admitted at trial that he had pled guilty to selling crack cocaine, CR-224 at 219, in support of his theory of defense that he was a crack cocaine dealer who had been arrested for manufacturing methamphetamine only because he had been in the wrong place at the wrong time, CR-223 at 29-31. The district court instructed the jury to consider "only the evidence that [the court had] admitted in the case" and that McLaughlin was on trial "only for those specific offenses alleged in the indictment[.]". CR-271 at 4, 24.

Pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851(a), the United States filed informations and notices stating that McLaughlin was subject to enhanced penalties because he had been convicted of three felony drug offenses. CR-144, see CR-114. The probation office recommended that the district court sentence McLaughlin to life imprisonment for the conspiracy offense. PSR ¶¶ 116, 118. The probation office also suggested that McLaughlin was a career offender pursuant to USSG §4B1.1. PSR ¶¶ 51, 116. McLaughlin objected to the "Criminal History and Enhancement" computation. The district court overruled McLaughlin's objections to the PSR and denied his request for a downward departure. CR-261 at 34-35.

## Discussion

### A. PROCEDURAL DEFAULT

McLaughlin is not entitled to relief on his claim at Ground One that he was denied effective assistance of counsel because his attorney, Grady Irvin, solicited a $60,000

payment from McLaughlin and his family and refused to assist McLaughlin when they did not pay. CV-7 at 4; CV-10 at 7-8. Ordinarily, claims that previously were available and were not raised in a prior proceeding are procedurally defaulted and barred from consideration on collateral review. *See Bousley v. United States*, 523 U.S. 614, 622-24 (1998); *United States v. Frady*, 456 U.S. 152, 166 (1982); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). When a defendant raises a constitutional claim on collateral review that he failed to raise in the trial proceedings or on direct appeal, he bears the burden of establishing cause and actual prejudice resulting from the error or actual innocence to excuse the defaults. *McCoy,* 266 F.3d at 1258-59. To show cause for not raising a claim in an earlier proceeding, a petitioner must show "some external impediment preventing counsel from constructing or raising the claim." *See High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000) (quoting *McCleskey v. Zant*, 499 U.S. 467, 497 (1991)). To establish prejudice, the petitioner must prove that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *See Wright v. Hopper,* 169 F.3d 695, 706 (11th Cir. 1999) (internal quotations omitted). This is a heavier burden than the burden of establishing plain error on appeal. *See Frady*, 456 U.S. at 164. The futility of raising a claim does not constitute sufficient cause to excuse the default. *Bousley,* 523 U.S. at 623; *Jones v. United States*, 153 F.3d 1305, 1307-08 (11th Cir. 1998).

McLaughlin went through a series of lawyers before Irvin was appointed to represent him. See CR-48, 52, 69, 71, 72, 74-75, 107, 116, 126, 128-29, 166. The record does not reveal that McLaughlin expressed dissatisfaction with Irvin or advised the court that Irvin made a request for money. See CR-223, 356. The jury returned its guilty verdicts on March 11, 2004. CR-162. Shortly after his conviction, McLaughlin filed motions to dismiss Irvin.

CR-169, 172, 179.[1] In these pleadings, McLaughlin claims that certain unspecified "irreconcilable conflict issues" had arisen between Irvin and himself, that Irvin did not come to see him before the suppression hearing or trial, and that Irvin failed to investigate the case or adequately prepare. CR-169, 179. McLaughlin also claimed that he never saw Irvin after their February 27, 2004 meeting until right before the suppression hearing, that Irvin failed to call witnesses suggested by McLaughlin, and that Irvin failed to confer with McLaughlin. CR-172. However, none of those pleadings contain the allegation now advanced by McLaughlin – that Irvin solicited a $60,000 payment from him and his family. In mid-June 2004, McLaughlin's family retained Dee Ann D. Athan. CR-182, 183. Athan twice moved to continue McLaughlin's sentencing. CR-183, 199. Neither pleading filed by Athan contains any allegation of impropriety by Irvin. After the court approved the substitution of Athan for Irvin, CR-196-198, Athan represented McLaughlin at sentencing and on direct appeal. CR-230, 235; Exhibit A to Doc. CV-26. Neither at sentencing nor on direct appeal did Athan raise any claim regarding Irvin's alleged request for payment.

McLaughlin himself could have raised this claim before his suppression hearing or trial. Likewise, this claim could have been raised by Athan before sentencing or on direct appeal. "We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record. If the record is sufficiently developed, however, ... [we] will consider an ineffective assistance of counsel claim on direct appeal." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir.2002) (citations and quotation marks omitted). Although the preferable

1These pleadings were struck from the record, CR-170, 173, 180, but are attached to Doc. CV-26.

means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion, "even if the record contains some indication of deficiencies in counsel's performance", *Massaro v. United States*, 538 U.S. 500, 504-05 (2003), ineffective assistance of counsel claims are not reserved solely for collateral review. "There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." *Id.* at 508. If such an allegation like that now advanced by McLaughlin had been raised earlier, this court would have had the opportunity to developed the record sufficiently to permit appellate review. The fact that McLaughlin waited almost four years to make this claim casts doubt on its truthfulness (notwithstanding the affidavit signed by his mother). McLaughlin offers nothing to indicate he ever advised Athan, or anyone else for that matter, of his claim. Athan cannot be deemed ineffective for failing to raise an argument of which she was completely unaware.

B. PRIOR RESOLUTION

At Ground Four, McLaughlin argues that he was denied effective representation because Irvin failed to file a motion in limine regarding his prior convictions. CV-5 at 7; CV-10 at 18-19. McLaughlin is not entitled to review of this claim because the Eleventh Circuit already has decided it. "Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (section 2255 motion is "neither a recapitulation of nor a substitute" for direct

appeal; absent changed circumstances of fact or law, court will not reconsider an issue already decided on direct appeal).

On direct appeal, McLaughlin argued that the district court erred in allowing the government to present 404(b) evidence regarding McLaughlin's prior crack cocaine dealing. See Exhibit A at 7-10; Exhibit C at 7-10. The Eleventh Circuit held that "evidence of McLaughlin's prior drug arrests was relevant to the issue of his state of mind with respect to the charged offenses". *McLaughlin,* 164 Fed. Appx. at 808-09. During his testimony McLaughlin did not dispute the prior drug convictions nor did he suffer any prejudice by the admission of such evidence. *See McLaughlin*, 164 Fed. Appx. at 808, n.5; CR-224 at 196. Even without this procedural bar, when analyzed under *Strickland* standards, neither trial nor appellate counsel were ineffective because such argument would have been without merit.

C. MERITS

McLaughlin raises several allegations of ineffective assistance of counsel by Irvin and Athan. As noted above, Grounds One and Four are procedurally barred or have been previously resolved on direct appeal. The remaining allegations are meritless and entitle him to no relief.

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on

the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second-guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining

whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

Ground Two

McLaughlin claims Irvin was ineffective because he failed to request a continuance, failed to consult with McLaughlin, and failed to interview witnesses. CV-7 at 6; CV-10 at 8-16, causing Irvin to present a deficient defense. These claims fall within the scope of *Strickland*'s admonition that a reviewing court should presume that counsel's performance was reasonable and cannot be adjudged incompetent based on second-guessing of strategic decisions. *Strickland*, 466 U.S. at 689-90. Decisions about whether to call certain witnesses and not others to testify is a tactical decision not vulnerable to collateral review. *Mills v. Armontrout*, 926 F.2d 773 (8th Cir. 1991).

For counsel's performance to be deficient, McLaughlin must establish that, in light of all the circumstances, counsel's performance was outside the wide range of professionally competent assistance. McLaughlin has failed to demonstrate deficient representation and resulting prejudice as required by *Strickland*.

Two weeks before his scheduled suppression hearing, McLaughlin requested a new attorney. CR-119. McLaughlin's motion was referred to the magistrate judge who was instructed to resolve the counsel issue and determine if the suppression hearing, set for March 4, 2004, could go forward if new counsel was appointed. CR-126. On February 27, following a hearing before the magistrate judge, Irvin was appointed to represent McLaughlin. CR-129. Although there is no transcript of the February 27 hearing, given the district court's order instructing the magistrate judge to determine whether the suppression hearing could be conducted with new counsel and the fact that hearing did occur, one must

assume that Irvin advised the court he was ready to proceed and did not need a continuance. That assumption is bolstered by the transcript of the suppression hearing. See CR-356 at 2-3.

The suppression hearing was held on March 4, 2004, six days after Irvin's appointment. CR-134; CR-356. Trial commenced on March 8, 2004, ten days after Irvin's appointment. CR-145. Prejudice may not be presumed simply because a defense attorney is brought into a case at a late date. *See, e.g., Kelly v. United States,* 820 F.2d 1173, 1176 (11th Cir. 1987) (fact that defense counsel was retained two days before trial commenced is not in itself sufficient basis to presume prejudice); *United States v. Mills*, 760 F.2d 1116, 1122 n.8 (11th Cir. 1985) (finding "little merit" in defendant's argument that trial counsel must be presumed ineffective because trial counsel had only one day to prepare for trial). Instead, prejudice may only be presumed when surrounding circumstances make it unlikely that any lawyer could provide effective assistance. *See Cronic*, 466 U.S. at 659-61. Otherwise, the court must inquire into counsel's actual performance at trial. *See id.* at 661. McLaughlin cannot establish that Irvin's actual performance at the suppression hearing and trial was deficient because the record does not support his contention. Such an assertion is contradicted by the record. See CR-356. Irvin presented a vigorous defense of McLaughlin as he could, given the evidence. See CR-261 at 42-43.

McLaughlin further claims that Irvin was ineffective because he failed to conduct pretrial interviews of four witnesses who would, according to McLaughlin, have testified at his trial to certain specific facts. CV-10 at 10-12. McLaughlin does not attach affidavits from these individuals confirming their proposed trial testimony. The witness list filed by Irvin indicates that Daniel "Danny" Leonard, Sandra Brown and "[a]ll witnesses listed by the

Government" (which included McLaughlin's co-defendant, James Howze) may be called by the defense. CR-160. The substance of Brown's proposed testimony was elicited by Irvin from McLaughlin when he testified. See CR-224 at 194-95 (no knowledge of items placed in the back of his truck by Sutton). As to Daniels, McLaughlin testified that Daniels was the confidential informant (CI), CR-224 at 201-02, and that McLaughlin was going to give Daniels the tank because McLaughlin owed Daniels "a favor." *Id*. at 202. Prior testimony of Paul Thompson established that McLaughlin called Daniels through a three-way phone call arranged by McLaughlin's girlfriend. *Id*. at 86. Contrary to McLaughlin's allegation, Irvin attempted to interview Howze (McLaughlin refers to an individual named "Howers" who the United States assumes is Howze based on facts in McLaughlin's pleading) prior to calling Howze as a defense witness. See CR-224 at 169-170. Irvin elicited testimony from Howze that Howze never cooked methamphetamine with McLaughlin, McLaughlin never gave Howze a tank, McLaughlin never sold Howze methamphetamine, that Howze was not aware of any drug activity involving McLaughlin, and that Howze had no idea why McLaughlin was charged. CR-224 at 181-83. This testimony refutes McLaughlin's claim that Howze was "hostile". As to the purported and completely unsubstantiated testimony of two Aviation Unit officers, McLaughlin has failed to demonstrate the relevance of this testimony nor does McLaughlin identify any prejudice. Likewise, McLaughlin has failed to demonstrate that appellate counsel was ineffective in this instance.

Ground Three

McLaughlin next raises an unsupported claim that Irvin failed to request discovery materials pursuant to Rule 16 and Brady. CV-7 at 6; CV-10 at 17-18. Irvin did obtain

information (including reports) from prior counsel before the suppression hearing. See CR-356 at 2-3; CR-7-3 at Exhibit J.

McLaughlin's unsupported claim demonstrates neither deficient performance nor any prejudice by either of his counsel and entitles him to no relief. *See Coulter v. Herring*, 60 F.3d 1499, 1504, n.8 (11th Cir. 1995) (if defendant fails to show that he is prejudiced by counsel's alleged errors, court may reject defendant's claim without determining whether counsel's performance was deficient); see also *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Grounds Five and Seven

McLaughlin claims that Irvin was ineffective when he failed to object to constructive amendment to the indictment during jury instructions, C-7 at 8 (Ground Five); CV-10 at 19-20, and sentencing/appellate counsel (Athan) was ineffective because she failed to recognize and raise this claim. CV-7 at 9 (Ground Seven); CV-10 at 21-22. McLaughlin alleges that the indictment charged that he knowingly and intentionally conspired to manufacture methamphetamine and distribute pseudoephedrine but the jury was instructed that he knowingly and willfully committed those offenses. *Id.* A review of the court's instructions reveals that the jury was instructed on the "knowingly or intentionally" element of the offenses three times, CR-271 at 12, 13 and 19. Only once did the court mention knowingly and willfully as to Count One. *Id.* at 12. Jurors were also advised that they would be given a copy of the indictment, which included the knowingly and intentionally language, to use during their deliberations. *Id.* at 11; CV-7-3 at Exhibit L.

Contrary to McLaughlin's claim, neither counsel was ineffective as to these claims. Even if this court were to find deficient representation, McLaughlin has failed to prove prejudice.

Grounds Eight, Nine and Ten

McLaughlin claims that Irvin and Athan were ineffective because they failed to investigate and challenge the validity of prior drug convictions contained in the United States' §851 notice. CR-7 at 9-11. McLaughlin contends that at least one of his convictions "was unconstitutional" and that he is actually innocent. CV-10 at 22. Although McLaughlin provided several attachments which purport to support his claims, see CV-7-3 at 19-35 (Exhibit M), 36-37 (Exhibit O) and 38-44 (Exhibit P), his claims fail.

The §851 notice was discussed at the conclusion of McLaughlin's suppression hearing. CR-356 at 136-142. The United States advised that an amended §851 notice was necessary because the United States had determined that McLaughlin had three separate felony convictions in 2002 for sale and possession of cocaine in Pasco County, Florida, (Case Nos. CRC0104570, CRC0104573 and CRC0104574), causing McLaughlin's minimum mandatory sentence to become life imprisonment. *Id.* at 137. Irvin reiterated, for McLaughlin's benefit, that if his case was not resolved with a guilty plea, the United States would file the amended §851 notice and McLaughlin would face a mandatory life sentence if convicted. *Id.* at 139. McLaughlin acknowledged he understood this with a nod. *Id.* at 140. There was no challenge to the United States' determination that McLaughlin has three prior felony drug convictions by Irvin or any of McLaughlin's prior counsel. The following day, March 5, 2004, the United States filed the amended § 851 notice. CR-144.

During cross-examination, McLaughlin was asked about his prior criminal history. CR-224 at 209-211. McLaughlin initially denied that he had three prior felony drug convictions, testifying that he sold cocaine to Detective Thompson twice and that a codefendant was the one who sold the drugs in the third instance. *Id*. at 209. After being shown the three judgments of conviction, McLaughlin acknowledged that those records showed three separate convictions. *Id.* at 209-10.

Arguably McLaughlin's claim is procedurally barred as to Athan. Prior to sentencing, Athan objected to the §851 notice, arguing that there was "insufficient proof of prior record to support" the enhancement. See Pre-Sentence Report (PSR) Addendum, November 23, 2004; CR-229. At sentencing, Athan voiced the same objection to the §851 notice. CR-261 at 9-10, 19-20. The United States advised the court that McLaughlin's prior convictions stemmed from three separate incidents, two undercover buys on September 21, 2001, by two different agents, and one approximately one month later, on October 25, 2001. *Id.* at 23-24. McLaughlin addressed the court and made no mention of these prior convictions. Id. at 40-42. After a lengthy review of his criminal history, *id.* at 43-45 , the court sentenced McLaughlin to life imprisonment, as required by the statute. *Id.* at 46-48. On direct appeal, Athan again unsuccessfully challenged McLaughlin's life sentence. See Attachment A at 10-11; *McLaughlin*, 164 Fed. Appx. at 804 n.1.

Athan cannot be deemed ineffective because she did challenge the enhancement. Likewise, given McLaughlin's admission during trial as to the three convictions, Irvin cannot be deemed ineffective because he did not challenge the §851 enhancement. Counsel is not ineffective for failing to raise a meritless claim. *See Chandler v. Moore*, 240 F.3d 907,

917 (11th Cir.2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir.1992). McLaughlin is not entitled to any relief based on these claims.

Grounds Eleven and Twelve

At Ground Eleven, McLaughlin claims that Irvin was ineffective because he failed to object to the denial of his suppression motion by arguing that the police officer's objective basis was a hunch and Athan was ineffective because she failed to raise this challenge on direct appeal. CV-7 at 11. At Ground Twelve, McLaughlin contends that Irvin was ineffective because he failed to obtain discovery materials and object to false testimony and that Athan was ineffective because she failed to raise this claim on direct appeal. CV-7 at 12. McLaughlin's memorandum of law does not address these claims. Indeed, McLaughlin claims that he cannot provide factual support for these claims because he is engaged in litigation involving the Freedom of Information Act (FOIA) Unit in Washington DC, and asks this court to hold these issues in abeyance or stay his motion until his FOIA litigation is resolved. *Id.*

McLaughlin's claim at Ground Eleven is completely without merit and can be decided without waiting for resolution of his FOIA litigation. A review of the suppression hearing transcript reveals that Irvin functioned as a zealous advocate, effectively cross-examining witnesses and arguing for suppression for lack of probable cause. See CR- 356 generally; *id.* at 124-131. At the conclusion of the suppression hearing, the court denied McLaughlin's motion, finding "that it respectfully is not even a close question" and that there was "an abundance of probable cause". *Id.* at 134. Counsel cannot be deemed ineffective because they failed to raise meritless challenges. In this instance, neither Irvin nor Athan were ineffective.

At Ground Twelve, McLaughlin claims that Irvin failed to argue prosecutorial misconduct for alleged failure to release discovery materials. This claim is devoid of any factual support. Likewise, McLaughlin's discovery claim is without merit for the reasons discussed above at Ground Three. This claim entitles McLaughlin to no relief.

Ground Six

Last, at Ground Six McLaughlin's claims that the "Cumulative Effect" of counsels' errors denied him effective representation and a fair trial. CV-7 at 8; CV-10 at 20-21. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by [counsel's] errors," *Strickland,* 466 U.S. at 696, however, where there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus. *See Lindstadt v. Keane*, 239 F.3d 191 (2nd Cir. 2001). In McLaughlin's case, all the alleged instances of ineffective assistance of counsel, considered alone, are without merit. That result does not change when they are considered in the aggregate.

Accordingly, the Court orders:

That McLaughlin's motion to vacate (CV-7; CR-353) is denied. The Clerk is directed to enter judgment against McLaughlin, to terminate any pending motions, and to close this case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must

first issue a certificate of appealability (COA). *Id.* “A [COA] may issue ··· only if the applicant has made a substantial showing of the denial of a constitutional right.” *Id.* at § 2253(c)(2). To make such a showing, Defendant “must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,” *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that “the issues presented were ‘adequate to deserve encouragement to proceed further, ’ " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 3, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Christopher F. Murray
Demetrius McLaughlin